UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-770(DSD/AJB)

Dominic G. Leomporra,

    Plaintiff,

v. **ORDER**

Jet Linx Aviation, Inc.,

    Defendant.

    J. Christopher Cuneo, Esq., John C. Ekman, Esq. and Lindquist & Vennum, 80 South Eighth Street, Suite 4200, Minneapolis, MN 55402, counsel for plaintiff.

    Katherine E. Becker, Esq., Jon R. Steckler, Esq. and Madigan, Dahl & Harlan, 222 South Ninth Street, Suite 3150, Minneapolis MN 55402 and James D. Sherrets, Esq., Diana J. Vogt, Esq. and Sherrets & Boecker, 260 Regency Parkway Drive, Suite 200, Omaha, NE 68114, counsel for defendant.

This matter is before the court upon cross-motions for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants plaintiff's motion.

**BACKGROUND**

This employment dispute arises out of the termination of plaintiff Dominic G. Leomporra by defendant Jet Linx Aviation,

Inc.[1] (Jet Linx). Jet Linx manages and charters aircraft. J. Walker Dep. 9, 16, 23, ECF No. 86-1. Leomporra is a former pilot with nearly thirty years experience managing aircraft. Compl. ¶ 1. In August 2007, Jet Linx approached Leomporra about working for Jet Linx. J. Walker Dep. 53-54. Leomporra met with Jet Linx President Jamie Walker and Chairman Dennis Walker and discussed transferring fourteen aircraft that he managed for non-party TAG, his then-employer, to Jet Linx. Id. at 57-58.

On October 15, 2007, the parties entered into an Executive Employment and Asset Sale Agreement (Agreement). Id. Ex. 14. Under the Agreement, Leomporra would work full time as Vice President of Managed Aircraft until March 31, 2009, earning $275,000 in annual base salary. Thereafter, Leomporra would work part-time as an account manager until March 31, 2012, earning $175,000 in annual base salary. Id. §§ 1.01, 1.02, 2.02. Jet Linx would provide benefits, commissions, $100,000 for personal goodwill by October 2007, and an additional $100,000 for each new aircraft brought in within the first year. Id. §§ 2.03, 2.05, 3.02(a)-(b).

The Agreement distinguished Jet Linx's right to terminate Leomporra before and after March 31, 2009. Leomporra could be fired at any time "for cause," defined as (1) failure to perform duties or observe company policies, (2) gross negligence or willful

---

[1] Jet Linx is now a limited-liability company. See J. Walker Dep. 14-15.

misconduct, (3) fraud, theft or financial dishonesty, (4) felony conviction, (5) breach of any agreement with the company, or (6) chronic absenteeism, alcohol or substance abuse. Id. §§ 1.05(a), 1.06(a). Leomporra was entitled to written notice and no less than fourteen days to cure a violation that would support a for-cause termination. Id. § 1.06(a). After March 31, 2009, Leomporra could also be fired with ninety days written notice if his personal goodwill failed to yield "sufficient gross profits to support" his compensation and good-faith efforts to renegotiate the contract were fruitless. Id. § 1.01. The Agreement superseded "any previous oral or written communications, representations, understandings or agreements." Id. § 6.06.

Leomporra brought six aircraft to Jet Linx between 2007 and the end of 2008. Barrett Aff. ¶¶ 7-8, ECF. No. 84. Two aircraft, owned by non-party Bemis Company (Bemis), were full-management contracts. Id. ¶ 7. Leomporra was responsible for maintaining the relationship between Jet Linx and Bemis. J. Walker Dep. 93. Sometime in 2008 or 2009, revenue at Jet Linx decreased and the company downsized. Id. at 119. On December 12, 2008, Jet Linx asked Leomporra to "adjust [his] base and commission compensation effective January 1, 2009 ... due to the lack of success in [his] efforts to secure signed contracts for new managed aircraft with sufficient gross profit." Matthes Dep. Ex. 47, ECF No. 86-20.

3

On January 13, 2009, Jet Linx notified Leomporra that his employment would be terminated within ninety days pursuant to § 1.01 of the Agreement because his "performance has not met the expectations generated by [his] assurances at the time of [his] employment." Compl. Ex. B. Jet Linx later withdrew the notice, conceding that termination under § 1.01 "must be based on the situation at or after March 31, 2009" and indicating that "[a]ny further determination as to termination under Section 1.01 ... will be made on or after" that date. Id. Ex. C.

On March 6, 2009, Jet Linx mailed Leomporra a notice of immediate termination for cause under § 1.05(a) of the Agreement, and sued him in Nebraska state court for fraud and breach of contract. Id. Ex. D; Ekman Aff. Ex. 2. The same day, Jet Linx mailed Leomporra an "Amended Relationship" offer, under which he would earn a base salary of $25,000 for a 6-month term, and, if he secured three aircraft in that period, the option of an additional 6-month term. Leomporra Aff. Ex. A, ECF No. 10-2. Leomporra received the termination letter on March 10, 2009, and three days later, filed suit against Jet Linx in Minnesota state court, alleging breach of contract and statutory damages under Minnesota Statutes §§ 181.13 and 181.171. Jet Linx timely removed.[2] On June

---

[2] Jet Linx, a limited-liability company, asserts that it is organized under Delaware law with its principal place of business in Omaha, Nebraska, but fails to indicate the citizenship of its members. See GMAC Commercial Credit LLC v. Dillard Dept. Stores,
(continued...)

1, 2009, the court denied Jet Linx's motion to transfer venue to Nebraska. See ECF No. 27. On September 18, 2009, Jet Linx answered and counterclaimed for breach of contract, intentional interference with business expectancy, rescission for fraudulent concealment and failure of consideration, and accounting and constructive trust. Am. Answer ¶¶ 57-93, ECF No. 57. Both parties moved for summary judgment. See ECF Nos. 75, 82. The court now considers the motions.

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)[3]; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[2](...continued)
Inc., 357 F.3d 827, 829 (8th Cir. 2004) (citizenship of LLC is citizenship of its members). Leomporra is a Minnesota citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

[3] The court cites the version of Rule 56 in force at the time of the motion and oral argument.

5

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## I. Breach of Contract

As an initial matter, the court finds that a valid contract existed.[4] Under Nebraska law, "a party cannot proceed on a theory of recovery which is premised on the existence of a contract and at the same time proceed alternatively on a theory that is premised on the lack of a contract." Genetti v. Caterpillar, Inc., 621 N.W.2d 529, 545 (Neb. 2001) (citation omitted). "One who brings suit upon a contract necessarily asserts that it is valid and enforceable" and "thereby ratifies it as a valid contract, binding alike upon himself and the defendant." Chesnut v. Master Labs., 27 N.W.2d

---

[4] The Agreement contains a Nebraska choice-of-law provision, and the parties do not dispute that Nebraska law applies.

541, 547 (Neb. 1947) (citation and internal quotation marks omitted). Both parties to this action sued for breach, thereby ratifying the contract and waiving any rescission claims.[5] To recover for breach of contract, a plaintiff must show "the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty." Gibb v. Citicorp Mortg., Inc., 518 N.W.2d 910, 922 (Neb. 1994).

**A. Jet Linx's Breach Claim**

Jet Linx first argues that Leomporra breached the contract by failing to bring fourteen TAG aircraft to Jet Linx, thereby failing to transfer his goodwill. There is no evidence, however, that bringing fourteen aircraft was a term or condition of the contract. At least one Jet Linx representative understood that Leomporra "hoped to bring" a specific number of aircraft, but made no guaranty. D. Walker Dep. 16, ECF No. 86-80. At most, the statement can be construed as puffing. See Ralston Purina Co. v. Iiams, 10 N.W.2d 452, 455 (Neb. 1943) (statements expressing opinion, belief, judgment, or estimate are puffing and not part of contract). Moreover, even if Jet Linx construed the statement as a term or condition of the contract, the Agreement expressly supersedes "any previous oral or written communications, representations, understandings or agreements." J. Walker Dep.,

---

[5] As a result, the court grants summary judgment against Jet Linx's on its failure of consideration and fraudulent concealment counterclaims. See Am. Answer ¶¶ 73-85.

Ex. 14 § 6.06. The Agreement makes no reference to bringing fourteen aircraft. Therefore, Leomporra did not breach the contract by failing to bring fourteen aircraft.[6]

Jet Linx also argues that Leomporra used his goodwill for personal benefit by convincing Bemis to cancel its contract, but provides no evidence to support this claim. To the contrary, the record supports a finding that Leomporra's only communications with Bemis were for the benefit of Jet Linx. See id. at 162. As a result, summary judgment against Jet Linx is warranted.

Further, even if the contract required Leomporra to bring fourteen aircraft, Jet Linx fails to identify damages, an essential element of a breach of contract claim. See Gibb, 518 N.W.2d at 922. A claim for "lost profits must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness." Home Pride Foods, Inc. v. Johnson, 634 N.W.2d 774, 783 (Neb. 2001) (citation omitted). Jet Linx exclusively relies on lost gross profits to calculate damages, without accounting for costs. Under Nebraska law, lost-profit

---

[6] The court also rejects Jet Linx's argument that Leomporra fraudulently misrepresented the number of management contracts and gross profits that he could generate. See Hayes v. Equine Equities, Inc., 480 N.W.2d 178, 182 (Neb. 1992) ("actionable fraud may not be predicated upon sales talk, puffing, or the expression of a mere opinion"). Leomporra's predictions as to future benefits he could bring to Jet Linx are not actionable. See NECO, Inc. v. Larry Price & Assocs., Inc., 597 N.W.2d 602, 606 (Neb. 1999) ("[F]raud cannot be based on predictions or expressions of mere possibilities in reference to future events.").

damages must be based on net profits. See id. at 784 (evidence of lost gross profits insufficient to support damages). The claim fails for this additional reason. Therefore, summary judgment against Jet Linx is warranted.

**B.  Leomporra's Breach Claim**

Leomporra claims that Jet Linx breached the contract by terminating him without cause, and he seeks damages for lost wages, commissions and benefits. Jet Linx argues that Leomporra was terminated for cause because he failed to perform his duties, and that the December 12, 2008, email from Jet Linx President Mark Matthes supports this assertion. The court disagrees. The email asks Leomporra to respond to Matthes's "request" that Leomporra adjust his compensation. Although Matthes refers to Leomporra's "lack of success," he does not state that Leomporra failed to perform his duties or committed any breach justifying a for-cause termination. Moreover, Matthes asked Leomporra to make the adjustment because new contracts were failing to yield "sufficient gross profit." See Matthes Dep. Ex. 47. The Agreement specifically considers sufficient gross profits as a ground for contract renegotiation or termination after March 31, 2009, under § 1.01(a). Accordingly, insufficient gross profits does not justify termination for cause under § 1.05(a). Lastly, the email does not notify Leomporra that he is in breach of the Agreement or demand that he cure his performance within fourteen days. There is

9

no evidence that Leomporra had any notice that Jet Linx believed he was not performing his duties. Jet Linx identified no other legal grounds to terminate Leomporra under § 1.05(a).[7] Therefore, Jet Linx breached the contract,[8] and summary judgment in favor of Leomporra is warranted on this claim.

**II. Intentional Interference with Business Expectancy**

Tortious interference with a business expectancy requires (1) the existence of a valid business expectancy, (2) knowledge by the interferer of the expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted. Huff v. Swartz, 606 N.W.2d 461, 466 (Neb. 2000). Jet Linx alleges that Leomporra interfered with its "right to benefit from Leomporra's goodwill" and "used his goodwill for his own benefit." Am. Answer ¶¶ 69, 71. Jet Linx provides no evidence to support this allegation. Moreover, "a party cannot interfere with its own

---

[7] Jet Linx argues that for-cause termination was warranted because Leomporra failed to transfer his goodwill and misrepresented the amount of business he could generate. Jet Linx provides no evidence that Leomporra failed to transfer his goodwill. Moreover, profit generated from goodwill is properly considered under § 1.01(a) and not as grounds for termination under § 1.05(a). Therefore, this argument fails.

[8] Whether Jet Linx could have terminated Leomporra under § 1.01(a) after March 31, 2009, is not before the court. Jet Linx breached the contract before March 31, 2009, therefore rendering justifications for termination under § 1.01(a) moot.

10

contract." Huff, 606 N.W.2d at 467.  Therefore, the claim fails, and summary judgment against Jet Linx is warranted.

**III.  Accounting and Constructive Trust**

"A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment." Trieweiler v. Sears, 689 N.W.2d 807, 834 (Neb. 2004) (citation omitted).  The party seeking to establish the trust must prove that "the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship ...." Id.

A constructive trust claim must identify and locate the specific amount of assets "by tracing the money to a specific and existing account." Id.  Leomporra argues that Jet Linx has not shown fraud and has not identified specific amounts of money or traced the assets to a specific account.  The court agrees.  Moreover, Jet Linx fails to respond to Leomporra's arguments in its memorandum.  Therefore, summary judgment against Jet Linx is warranted on this claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Leomporra's motion for (1) summary judgment against Jet Linx on Jet Linx's amended counterclaims and (2) summary judgment on liability against Jet Linx on Leomporra's breach of contract claim (count 1) [ECF No. 75] is granted.

2. Jet Linx's motion for summary judgment [ECF No. 82] is denied.

Dated:  January 25, 2011

                                           s/David S. Doty
                                           David S. Doty, Judge
                                           United States District Court